**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X

TARA RANIERE, NICHOL BODDEN, MARK A.            :
VOSBURGH, STEVEN HUMPHRIES, MARY LARA,          :
and BILL FARMER,  on behalf of themselves       :       Civil Action
individually, and on behalf of all, similarly-situated  :       No. 11-cv-2448 (RWS) (AJP)
persons,                                        :
                                                :
                        Plaintiffs,             :
                                                :
            v.                                  :
                                                :
CITIGROUP INC., CITIBANK, N.A., and             :
CITIMORTGAGE INC.,                              :
                                                :
                        Defendants.             :
------------------------------------------------------------------------X


<u>**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY
SETTLEMENT APPROVAL**</u>


Submitted by:

**WIGDOR LLP**

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845

*Attorneys for Plaintiffs and*
*Proposed Class Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

I.   BACKGROUND ....................................................................................... 1

   A. Allegations of the Complaint ............................................................ 1

   B. Procedural History ........................................................................... 3

II.  SUMMARY OF THE PROPOSED SETTLEMENT ................................ 5

   A. Settlement Consideration ................................................................. 5

   B. Timing of Settlement Payments ....................................................... 6

   C. Settlement Allocation Formula ........................................................ 6

   D. Settlement Claims Administrator and Notice to Class Members ....... 8

   E. Eligible Employees ......................................................................... 8

   F. Release of Claims ........................................................................... 8

   G. Reserve Fund .................................................................................. 9

   H. Attorneys' Fees and Litigation Costs ............................................... 9

   I. Service Awards ................................................................................ 10

III. CLASS ACTION SETTLEMENT IS APPROPRIATE .......................... 10

   A. Procedure for Class Action Settlement ............................................ 10

   B. Preliminary Approval of the Settlement is Appropriate .................... 11

   C. The Settlement is Fair, Reasonable and Adequate ............................ 13

IV.  PROVISIONAL CERTIFICATION IS APPROPRIATE ........................ 22

   A. Numerosity ..................................................................................... 23

   B. Commonality ................................................................................... 23

   C. Typicality ....................................................................................... 24

        D.  Adequacy of the Named Plaintiffs ........................................................25

        E.  Certification Is Proper Under Rule 23(b)(3) ....................................25

V.     PLAINTIFFS' CONUSEL SHOULD BE APPOINTED AS
        CLASS COUNSEL....................................................................................27

VI.    THE PROPOSED NOTICE AND AWARD DISTRIBUTION ARE FAIR............28

CONCLUSION...................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997)................................................................. 23, 25

*Aponte v. Comprehensive Health Mgmt. Inc.*,
    No. 10 Civ. 4825(PKC), 2011 WL 2207586 (S.D.N.Y. June 2, 2011) ...........................24

*Cagan v. Anchor Sav. Bank FSB*,
    No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)...........................21

*Clark v. Ecolab, Inc.*,
    Nos. 07 Civ. 8623(PAC), 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ...................... 12

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013).................................................................20

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)...........................................................26

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)....................................................... 13, 15

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005).................................................*passim*

*Gen. Tel. Co. of SW v. Falcon*,
    457 U.S. 147 (1982)...................................................................23

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)..........................................................26

*Henry v. Quicken Loans Inc.*,
    2009 WL 3199788 (E.D. Mich. Sept. 30, 2009)....................................... 17, 18

*Henry v. Quicken Loans Inc.*,
    698 F.3d 897 (6th Cir. 2012) .........................................................18

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000)............................................... 14, 16

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................................ 13

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)..................................................................22

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ...........................................................29

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ..........................................................18

*In re Traffic Exec. Ass'n*,
   627 F.2d 631 (2d Cir. 1980)..................................................................12

*Kamean v. Local 363, Int'l Bhd. of Teamsters*,
   109 F.R.D. 391 (S.D.N.Y. 1986) ..........................................................23

*Khait v. Whirlpool Corporation*,
   No. 06-6381(ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ................................27

*Marriott v. Cnty. of Montgomery*,
   227 F.R.D. 159 (N.D.N.Y. 2005) ..........................................................26

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1998)..................................................................12

*McBean v. City of New York*,
   228 F.R.D. 487 (S.D.N.Y. 2005) ..........................................................26

*Morano v. Intercontinental Capital Grp., Inc.*,
   2012 WL 2952893 (S.D.N.Y. July 17, 2012) .....................................19

*Noble v. 93 Univ. Place Corp.*,
   224 F.R.D. 330 (S.D.N.Y. 2004) ..........................................................26

*Novella v. Westchester County*,
   443 F. Supp. 2d 540 (S.D.N.Y. 2006).....................................................23

*Oetinger v. First Residential Mortg. Network*,
   2009 WL 2162963 (W.D. Ky. July 16, 2009) .....................................19

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ...............................................................21

*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*,
   698 F.2d 150 (2d Cir. 1983)..................................................................23

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ................................................................23

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)....................................................................24

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*,
    No. 01 Civ. 11814(LAP), 2004 WL 2997957 (S.D.N.Y. May 14, 2004)........................ 21

*Toure v. Cent. Parking Sys.*,
    No. 05 Civ. 5237(WHP), 2007 WL 2872455 (S.D.N.Y. Sept. 28, 2007) .........................25

*Torres v. Gristede's Corp.*,
    No. 04 Civ. 3316(PAC), 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006) .........................26

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)..........................................................................20

*Wong v. HSBC Mortg. Corp.*,
    2010 WL 3833952 (N.D. Cal. Sept. 29, 2010) .................................................19

## **Statutes and Other Authorities**

FRCP 23 .................................................................................................*passim*

Named Plaintiffs Tara Raniere, Nichol Bodden, Mark Vosburgh, Steven Humphries, Mary Lara and Bill Farmer (the "Named Plaintiffs"), on behalf of themselves, the proposed FLSA Collective (defined on page 22) and the proposed State Law Class (defined on page 22) (the FLSA Collective and the State Law Class referred to as "Plaintiffs" and/or "Class Members") hereby move for preliminary approval of the proposed Stipulation and Settlement Agreement (the "Agreement"), settling the class and collective claims alleged in the Amended Complaint (the "Settlement") with Defendants CitiMortgage, Inc., Citigroup, Inc. and Citibank, N.A. (together, "Defendants" or "Citi") (Citi together with Plaintiffs, the "Parties"). The Named Plaintiffs together with Wigdor LLP as proposed class counsel ("Class Counsel") respectfully request that the Court enter the Proposed Order Granting Preliminary Approval of Class and Collective Action Settlement (the "Proposed Order"). *See* Gottlieb Decl., Ex. J (Proposed Order).

## I.     BACKGROUND

### A.     Allegations of the Complaint

The Named Plaintiffs and the Class Members they seek to represent were and/or are employed by Citi in the United States as "Home Lending Specialists" ("HLSs") during applicable time periods for the FLSA Collective and State Law Class. *See* Gottlieb Decl., Ex. A (Complaint); Ex. B (Amended Complaint). The Named Plaintiffs alleged in the Amended Complaint that, in this role, Plaintiffs would complete mortgage applications for Citi's customers interested in purchasing a mortgage, which included:

- Collecting financial information/documents from customers, followed by entering the financial information into Citi's computer software.

- The software would identify whether the customer was conditionally approved for a particular mortgage based on the financial information that was provided.

- Plaintiffs would notify the customer whether he or she was conditionally approved for the particular mortgage.

- If a customer was conditionally approved, Plaintiffs would request additional financial documents to satisfy the conditions set forth from the software.

- Plaintiffs would then notify an individual known as a "Processor" to review the customers' mortgage application.

- After a review of the mortgage application and documents, the Processor would forward the mortgage application on for final approval.

- Plaintiffs had no authority to approve or disapprove a mortgage application; instead, Plaintiffs followed Citi's internal processes to gather necessary information and documents to complete a customer's mortgage application.

Gottlieb Decl., Ex. B at ¶¶ 24-27.  In carrying out these duties, Plaintiffs worked in excess of 40 hours per week.  *Id.* at ¶ 33.

Prior to July 18, 2010, Citi classified Plaintiffs as "exempt" from the overtime requirements of the FLSA and applicable state laws.  *Id.* at ¶ 35.  As such, Citi did not pay any premium overtime compensation for hours worked in excess of 40 hours per week.  *Id.* However, on or about July 18, 2010, Citi reclassified Plaintiffs as "non-exempt."  *Id.* at ¶ 36. Thereafter, Plaintiffs allege that they began receiving some compensation for overtime hours worked.  *Id.*  However, the Named Plaintiffs have alleged that this compensation routinely fell short of what is required because they were permitted and/or encouraged to work off-the-clock hours, while at the same time being discouraged from reporting the full amount of their working time.  *Id.* at ¶¶ 36, 37.  Therefore, the Named Plaintiffs have alleged that even after July 18, 2010, Plaintiffs are owed unpaid overtime compensation and unpaid off-the-clock time.  *Id.* at ¶ 37.

In addition, Plaintiffs allege that they were not provided with uninterrupted meal and rest periods, they were not provided all vested vacation pay, they were not provided accurate wage

statements, and they were not paid all wages owed upon termination of employment.  Gottlieb

Decl., Ex. B at ¶¶ 39-42.

## B.   **Procedural History**

On April 8, 2011, Named Plaintiffs Raniere, Bodden and Vosburgh commenced this

action, alleging violations of the FLSA and the New York Labor Law ("NYLL") as a class and

collective action.  Gottlieb Decl., Ex. A.  Shortly thereafter, substantial motion practice ensued:

- Citi moved to dismiss the action on the basis of the "first filed rule," arguing that, *inter alia*, a previously action filed precluded this action.  This motion was fully briefed on June 2, 2011.  *See* Dkt. Nos. 13, 29 and 53.

- Citi moved to compel individual arbitration as to Named Plaintiffs Raniere and Bodden, arguing that, *inter alia*, an arbitration agreement with a class/collective waiver expressly precluded their class/collective claims.  This motion was fully briefed on June 2, 2011.[1]  *See* Dkt. Nos. 27, 46 and 58.

- The Named Plaintiffs moved for nationwide conditional certification of the FLSA collective claims.  This motion was fully briefed on June 27, 2011.  *See* Dkt. Nos. 17, 31 and 68.

On November 22, 2012, the Court denied Citi's motion to dismiss, denied Citi's motion to

compel arbitration and granted the Named Plaintiffs' motion for conditional certification.  *See*

Gottlieb Decl., Ex. C (the "11/22/12 Decision").  In early January 2013, Class Counsel sent

notices of pendency to more than 200 potential collective members.  Gottlieb Decl., at ¶ 16.

During the 75 day opt-in period, 85 individuals opted-in, together with the three original Named

Plaintiffs and eight pre-conditional certification opt-ins, totaling 96 individuals ("Opt-In

Plaintiffs").  *See* Gottlieb Decl., Ex. D (the "Docket Sheet").

---

[1]      Citi issued a revised arbitration policy in January 2011 that included a class and collective action waiver.  *See* Gottlieb Decl., Ex. E (the "2011 Arbitration Policy").  Plaintiff Vosburgh was no longer employed at Citi when the new arbitration policy was issued.  Gottlieb Decl., Ex. B at ¶ 8.

Contemporaneously with the opt-in period, Citi appealed the denial of the motion to compel individual arbitration as to Plaintiffs Raniere and Bodden. *See* Dkt. No. 76. Citi also sought a stay of the District Court proceedings. *See* Dkt. No. 78. Thus, Class Counsel and Citi negotiated a stay of the District Court proceedings, subject to continuation of the opt-in period and the agreed exchange of certain informal discovery. The informal discovery consisted of Citi providing information and documents regarding (i) the individuals nationwide who worked as HLSs over the relevant periods, (ii) compensation information for all HLSs over the relevant periods, (iii) the announcement of HLSs being reclassified as overtime "non-exempt," and (iv) formal job description documents. Class Counsel, in turn, agreed to provide Citi resumes, employment applications and online profiles of certain opt-in Plaintiffs describing their position. *See* Dkt. No. 96.

Citi's appeal to the Second Circuit was fully briefed on June 18, 2013. *See* Gottlieb Decl., Ex. F (the "2d Circuit Docket Sheet"). Citi was joined by *amici* The Chamber of Commerce of the United States of America and the Society for Human Resource Management. *See* 2d Circuit Dkt. No. 34. Named Plaintiffs Raniere and Bodden were joined by *amici* the National Employment Lawyers Association, the National Employment Law Project and The Employee Rights Advocacy Institute for Law & Policy. *See* 2d Circuit Dkt. No. 62. On August 12, 2013, the Second Circuit reversed the 11/22/12 Decision and remanded the action. *See* Gottlieb Decl., Ex. G (the "Second Circuit Opinion"). On August 26, 2013, Class Counsel submitted a Petition for Rehearing *En Banc*.[2] *See* 2d Circuit Dkt. No. 176.

---

[2] On October 15, 2013, the Second Circuit rejected a petition for rehearing of its decision in *Sutherland v. Ernst & Young LLP*, No. 12-304 (2d Cir. Aug. 9, 2013) – the companion case that was argued on appeal the same day as this case – in which the Second Circuit ruled that the ability to bring a collective action was a procedural right that could be waived.

As a result of the Second Circuit Opinion, Plaintiffs assert that all Plaintiffs who were no longer employed at Citi as of January 2011 (*see supra* at n. 1) would likely have been able to continue pursuing their claims on a class and/or collective basis, subject to potential decertification of the FLSA collective action and the need for the Court to rule on class certification of the state law claims. Gottlieb Decl., at ¶ 21. However, all Plaintiffs who were bound by the 2011 Arbitration Agreement would likely be required to pursue their claims on an individual basis in arbitration. *Id.*   Thus, 25 Plaintiffs filed individual arbitrations in the weeks following the Second Circuit Opinion. *Id.*

In or around September 2013, the Parties agreed to attempt mediation and requested that the Petition for Rehearing *En Banc* be held in abeyance and that the district court proceedings be stayed. *See* 2d Circuit Dkt. No. 183. On February 10, 2014, the Parties attended a mediation with the highly accomplished employment mediator Michael Dickstein. Gottlieb Decl., at ¶ 23. In attendance were Named Plaintiffs Raniere, Bodden, Vosburgh, Opt-In Plaintiff Allison Singer and Class Counsel, as well as representatives from Citi and Citi's counsel. At the mediation, the Parties reached a settlement in principle on behalf of an FLSA Collective and a State Law Class. *Id.* at ¶ 24. The Parties have since executed a full settlement agreement. *See* Gottlieb Decl., Ex. H.

II.   **SUMMARY OF THE PROPOSED SETTLEMENT**

A.   **Settlement Consideration**

Citi has agreed to pay a maximum amount of $4,650,000 (the "Settlement Amount") to resolve this action on a class and collective basis. The Settlement Amount will be the amount from which (i) all Plaintiffs who participate in the settlement ("Participating Claimants") shall receive their allocated share, (ii) Class Counsel will be compensated for their fees and

reimbursed for expenses, (iii) the Named Plaintiffs and Plaintiffs Steven Humphries, Mary Lara,

Bill Farmer and Allison Singer will receive service payments ("Service Awards"), (iv) the costs

of administrating the settlement will be paid, and (v) a reserve fund will be funded (the "Reserve

Fund").  Gottlieb Decl., Ex. H at ¶¶1.35 *et seq.*.

### B. Timing of Settlement Payments

Within thirty (30) days of the Effective Date (defined below) the Claims Administrator

(defined below) will mail to each Participating Claimant his or her allocation from the Settlement

Amount.  Citi will deposit an amount sufficient to pay the claims from the Settlement Amount

with the Claims Administrator no later than 14 days before that date.  Gottlieb Decl., Ex. H at

¶2.7.1.

### C. Settlement Allocation Formula

The portion of the Settlement Amount to be distributed to each Participating Claimants

will be determined using the following allocation formula:

- First, the "Total Weighted Pre-Reclassification Compensation" will be computed by totaling the compensation of all Class Members, from July 17, 2010, back to: April 8, 2005, if they worked in New York; April 8, 2008, if they worked in California; or as to the FLSA Opt-Ins, back to the beginning of each of their state's maximum limitations period (six years if they worked in New York, four years if they worked in worked California – but no earlier than April 8, 2008, only for those who worked in California – or three years if they worked in any other state and not New York or California) measured back from when they filed their consent form, and then multiplying that total by six (6).  Class Members who were employed by Defendant as an HLS in any state other than California or New York (except the FLSA Opt-Ins) will have zero pre-reclassification compensation.

- Second, the "Total Post-Reclassification Compensation" will be computed by totaling the compensation of all Class Members since July 18, 2010 (but since March 1, 2011, for Class Members who were employed by Defendant as an HLS in any state other than California or New York, except the FLSA Opt-Ins), through the date of Preliminary Approval.

- <u>Third</u>, the Total Weighted Pre-Reclassification Compensation will be added to the Total Post-Reclassification Compensation to compute the "Combined Total Compensation" of all Class Members.

- <u>Fourth</u>, each Class Member's "Individual Weighted Pre-Reclassification Compensation" will be computed by totaling the Class Member's compensation from July 17, 2010, back to: April 8, 2005, if they worked in New York; April 8, 2008, if they worked in California; or as to the FLSA Opt-Ins, back to the beginning of each of their state's maximum limitations period (six years if they worked in New York, four years if they worked in worked California – but no earlier than April 8, 2008, only for those who worked in California – or three years if they worked in any other state and not New York or California) measured back from when they filed their consent form, and then multiplying that total by six (6).  Class Members who were employed by Defendant as an HLS in any state other than California or New York (except the FLSA Opt-Ins) will have zero pre-reclassification compensation.

- <u>Fifth</u>, each Class Member's "Individual Post-Reclassification Compensation" will be computed by totaling the Class Member's compensation from July 18, 2010 (but since March 1, 2011, for Class Members who were employed by Defendant as an HLS in any state other than California or New York, except the FLSA Opt-Ins), through the date of Preliminary Approval.

- <u>Sixth</u>, each Class Member's Individual Weighted Pre-Reclassification Compensation will be added to his or her Individual Post-Reclassification Compensation to compute the Class Member's "Combined Individual Compensation."

- <u>Finally</u>, each Class Member's Combined Individual Compensation will be divided by the Combined Total Compensation to determine the Class Member's *pro rata* allocation percentage.

Gottlieb Decl., Ex. H at ¶2.2.1.  This formula is based on substantial discovery and is reflective of, *inter alia*, the approximate differential in alleged damages sustained by Class Members during the Post-Reclassification Period relative to the Pre-Reclassification Period, as well as the relative legal and factual hurdles to establishing liability in the respective periods. Gottlieb Decl., at ¶ 27.

### D.    Settlement Claims Administrator and Notice to Class Members

The Parties have mutually agreed to select Garden City Group (the "Claims

Administrator" or "GCG") to administer the Settlement.  Gottlieb Decl., Ex. H at 1.3.  As stated

above, GCG's fees will be paid from the Settlement Amount.  Within fifteen (15) days after

preliminary approval is granted by the Court, GCG will mail the Proposed Notice to all Class

Members.  *Id.* at 1.23; Gottlieb Decl., Ex. I (the "Proposed Notice").   GCG will also handle the

receipt of the claims forms sent in by the Class Members.  Gottlieb Decl., Ex. H at 2.21.

Following final approval of the Settlement by the Court, GCG will administer the Settlement

with supervision, oversight and communication by the Parties.  *Id.* at 2.10.

### E.    Eligible Employees

The eligible Class Members include any individual who worked for Citi as an HLS from

(i) April 8, 2005, to September 15, 2013, if they worked in New York; (ii) April 8, 2008, to

September 15, 2013, if they worked in California; (iii) March 1, 2011, to September 15, 2013, if

they worked in any other state (and not New York or California); or (iv) as to the Opt-In

Plaintiffs, from the beginning of each of their state's maximum limitations period (six years if

they worked in New York, four years if they worked in worked California – but no earlier than

April 8, 2008, only for those who worked in California – or three years if they worked in any

other state and not New York or California) measured back from when they filed their consent

form, to September 15, 2013.  Gottlieb Decl., Ex. H at 1.4.

### F.    Release of Claims

Section 2.8 of the Agreement contemplates the following with regard to releases:

- Class Members who timely submit timely and valid claims forms will release
  all federal and state law wage and hour claims for the entire applicable federal
  and state statute of limitations period from (i) April 8, 2005, if they worked in
  New York; (ii) April 8, 2008, if they worked in California; (iii) March 1,

2011, if they worked in any other state (and not New York or California); or (iv) as to the Opt-In Plaintiffs, from the beginning of each of their state's maximum limitations period (six years if they worked in New York, four years if they worked in worked California – but no earlier than April 8, 2008, only for those who worked in California – or three years if they worked in any other state and not New York or California) measured back from when they filed their consent form.

- Class Members who do not timely submit timely and valid claims forms, but do not opt-out of the Settlement, will release all state law wage and hour claims for the entire applicable state statute of limitations period from (i) April 8, 2005, if they worked in New York; (ii) April 8, 2008, if they worked in California; (iii) March 1, 2011, if they worked in any other state (and not New York or California); or (iv) as to the Opt-In Plaintiffs, from the beginning of each of their state's maximum limitations period (six years if they worked in New York, four years if they worked in worked California – but no earlier than April 8, 2008, only for those who worked in California – or three years if they worked in any other state and not New York or California) measured back from when they filed their consent form.  However, Class Members who do not timely submit timely and valid claims forms, but do not opt-out of the Settlement, will not release any federal claims under the FLSA.

- Each Named Plaintiff and Opt-In Plaintiff Allison Singer will provide a general release of all claims against Citi.

Gottlieb Decl., Ex. H at 2.8.

### G.   Reserve Fund

Citi will establish an $80,000 Reserve Fund from the Settlement Amount, which will be used to make payments to Class Members who file late claims, who dispute their allocation, who were not identified as Class Members but have a good faith claim for participation, or for any other reasonable purpose necessary to effectuate the Settlement.  Gottlieb Decl., Ex. H at 2.2.4.

### H.   Attorneys' Fees and Litigation Costs

Class Counsel will apply to the Court for an award of attorneys' fees of up to 33 and 1/3% of the Settlement Amount, as well as reasonable litigation costs and expenses not to exceed $60,000.  Gottlieb Decl., Ex. H at 2.9.1.  Class Counsel represent that the attorneys' fees that they will seek will be reasonable and will be consistent with methods for determining attorneys'

fees awards in the Second Circuit.  However, the Court need not decide the attorneys' fees and costs issue at this point as such determination need only be made after Plaintiffs have had the opportunity to consider the terms of the Settlement, when the Parties seek final approval of the Settlement.

 **I.**  **Service Awards**

 The Named Plaintiffs and Opt-In Plaintiff Allison Singer are seeking enhancement Service Awards in recognition of services rendered to the Class Members, including: (i) reviewing and approving pleadings and other filings, (ii) searching for and providing documents, (iii) reviewing documents and information provided by Defendant, (iv) meeting and communicating with Class Counsel at all phases of the litigation, (v) preparing for, attending and actively participating in the mediation, and/or (vi) undertaking the risk of retaliation. Gottlieb Decl., Ex. H at 1.12; Gottlieb Decl., at ¶ 33.   Named Plaintiffs Tara Raniere, Nichol Bodden and Mark Vosburgh will seek approval for $20,000 each, Opt-In Plaintiff Allison Singer will seek approval for $15,000, and Named Plaintiffs Steven Humphries, Mary Lara and Bill Farmer will seek approval for $7,500 each. *Id.* The Court need not approve these Service Awards now, as the Parties will address those payments after all Plaintiffs have had the opportunity to fully consider the Settlement, when the Parties seek final Settlement approval.

**III.** **CLASS ACTION SETTLEMENT IS APPROPRIATE**

 **A.**  **Procedure for Class Action Settlement**

The well-defined class action settlement procedure includes three distinct steps:

 1. Preliminary approval of a proposed settlement after submission to the Court of a written motion for preliminary approval and certification of the settlement class;

 2. Dissemination of notice of settlement to all affected class members; and

3.    A fairness hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002).  This process safeguards the Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  Through this motion, the Named Plaintiffs and Class Counsel respectfully request that the Court take the first step and approve the following schedule for final resolution of this matter:

1.    No later than thirty (30) days after the Court's grant of preliminary approval, GCG will mail the Proposed Notice to Class Members.

2.    Class Members will have seventy-five (75) days after the date the Notice is mailed to submit claims forms, opt-out or object ("Notice Period").

3.    A fairness hearing will be held as the Court orders following the Notice Period, with Class Counsel filing a motion for final approval in advance of the fairness hearing by a date to be set by the Court.

4.    If the Court grants the motion, the Court will issue a final order and judgment ("Final Approval Order").  If no party seeks reconsideration, the "Effective Date" of the Settlement will be (i) the date of final affirmance on any appeal, or (ii) of no appeal is filed, the expiration date of the time for the filing of any form of valid appeal from the judgment.

5.    Within 30 days, the Claims Administrator will distribute the Settlement Amount pursuant to the terms of the Agreement.  Citi will deposit an amount sufficient to pay the claims from the Settlement Amount with the Claims Administrator at least 14 days before that date.

Gottlieb Decl., Ex. H at 1.11, 1.13, 1.24, 1.38, 2.7.1.

**B.    Preliminary Approval of the Settlement Is Appropriate**

The law favors compromise and settlement of class actions.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("strong judicial policy in favor of settlements, particularly in the class action context"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516,

535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623(PAC), 04 Civ. 4488(PAC), 06 Civ. 5672(PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Id.* This is particularly true where, as here, the Parties have engaged in extensive litigation, negotiation and informal discovery that have allowed them to thoroughly assess all aspects of the case.

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Clark*, 2009 WL 6615729, at *3 (citing *Newberg* § 11.25). To grant preliminary approval, the Court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980).

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). If the settlement was achieved through experienced counsels' arm's length

negotiations, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### C.   The Settlement Is Fair, Reasonable and Adequate

In evaluating settlement, courts generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation" to determine whether the settlement falls within "the range of reasonableness," *Newberg* §§ 11.25, 11.26, it is useful for the Court to consider these criteria.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the Settlement Amount in light of the best possible recovery, and (9) the range of reasonableness of the Settlement Amount in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. In this case, the *Grinnell* factors weigh in favor of approval, and certainly in favor of preliminary approval.

### 1.   Litigation Through Trial Would Be Complex, Costly and Long *(Factor 1)*

By reaching a favorable settlement prior to more protracted litigation, extensive discovery, rounds of complex motion practice, and trial and appeals, the Parties seek to avoid significant expense and delay and recovery is ensured for the Class Members. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other

problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp.

2d 164, 174 (S.D.N.Y. 2000). This case is no exception.

Here, absent resolution, Plaintiffs Raniere and Bodden would proceed with their Petition

For Rehearing *En Banc*, and if that is denied, would likely appeal to the Supreme Court. Citi

would likely seek a continued stay of the district court proceedings until any and all appeals were

resolved, which could take many months if not longer. These appeals would be complex and

time consuming and require significant resources of all Parties and the judiciary. Gottlieb Decl.,

at ¶ 34.

Appeals aside, the continued litigation of this matter would be complex and time

consuming. Here, there are approximately 840 Class Members, covering a period of up to more

than six years, each of whom has claims under various federal and state laws. Absent resolution,

approximately 670 of these Class Members would be obligated to pursue their claims in

individual arbitrations, while the remaining approximately 198 Class Members would seek to

continue to pursue their claims before the Court. That is, continued litigation would involve

dozens of potential parallel individual arbitrations in arbitration venues across the country,

together with a federal class and/or collective action before the Court. *Id.* at ¶ 35.

Discovery in these potential arbitrations and the federal class and/or collective action

would likely be costly and lengthy. Indeed, the Parties engaged in targeted, pre-mediation

discovery, and even in such abbreviated form consisted of, *inter alia*, the exchange and analysis

of information and documents regarding (i) the individuals who worked as HLSs over the

relevant periods, (ii) compensation information for all HLSs over the relevant periods, (iii) the

announcement of Plaintiffs being reclassified as overtime "non-exempt," and (iv) formal job

description documents. Class Counsel provided Citi with resumes, employment applications and

online profiles of certain opt-in Plaintiffs describing the duties of their position.  Moreover, this discovery required substantial analysis.  Gottlieb Decl., at ¶ 36.

While the targeted discovery to date has been expansive, it pales in comparison to discovery required for class certification and on the merits.  In full discovery, the Parties would likely seek numerous depositions on issues regarding, *inter alia*, Citi's wage practices, the Class Members' job duties, Citi and Plaintiffs' time keeping practices, and Plaintiffs' hours worked.  Moreover, the Class Members would likely seek discovery related to the decision to classify the Class Members as "exempt" and/or "non-exempt" during various periods, which is likely to result in substantial motion practice regarding privilege issues.  Gottlieb Decl., at ¶ 37.

Following this, and other, additional discovery, there would likely be contested motions for class certification and motions for summary judgment.  Thereafter, preparing for and putting on evidence at a trial would be lengthy and complex.  Even after a potential judgment at trial, any judgment likely would be appealed, further extending the litigation.  Settlement, on the other hand, makes monetary relief available in a prompt, efficient and relatively risk-free manner.  *Id.* at ¶ 38.

Therefore, the first *Grinnell* factor weighs in favor of preliminary approval.

## 2.  The Reaction to the Settlement Has Been Positive (*Factor 2*)

Although notice of the Settlement has not yet been issued to the Class Members, the Named Plaintiffs have all expressed their approval of the Settlement by signing the Agreement.  Gottlieb Decl., Ex. H p. 35-41.  The Court should more fully analyze this factor after the Notice Period when Class Members have had an opportunity to submit claim forms, opt-out or object.  However, given that the three Named Plaintiffs and Class Counsel have agreed to the Settlement following protracted negotiations, this factor weighs in favor of preliminary approval.

**3. Sufficient Discovery Has Taken Place to Allow the Parties to Resolve the Case Responsibly (*Factor 3*)**

The Parties have conducted substantial discovery which is more than sufficient to resolve the action responsibly. Gottlieb Decl., at ¶ 40. The proper question to ask at this stage is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537. "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176.

Here, the Parties' targeted discovery more than meets this standard:

- Citi provided Class Counsel with a list of all individuals who worked as HLSs over the relevant periods;

- Citi has provided Class Counsel with Microsoft Excel spreadsheets containing compensation information over the relevant periods;

- Citi provided Class Counsel documents concerning the announcement of Plaintiffs being reclassified from overtime "exempt to overtime "non-exempt";

- Citi provided Class Counsel formal job description documents;

- Class Counsel provided Citi with documents describing Plaintiffs' duties as an HLS; and

- Class Counsel had access to the opt-in Plaintiffs to interview them regarding their experiences, including their work hours.

Gottlieb Decl., at ¶ 40. Moreover, all of this information and data Citi provided was then analyzed by Class Counsel with involvement from the Named Plaintiffs. *Id.* at ¶ 41. Class Counsel was able to reasonably approximate, *inter alia*, (i) the total cumulative income earned by the Class Members, (ii) the estimated amount of unpaid overtime for the Class Members, and (iii) the estimated potential liquidated damages. These figures enabled Class Counsel to determine a reasonable and reliable estimate of class-wide damages. *Id.* at ¶ 41.

Of course, Citi has articulated potentially strong defenses that – while Class Counsel felt confident could be overcome – needed to be considered.  Gottlieb Decl., at ¶ 42.  Citi has asserted various defenses, including, but not limited to: (i) that the Plaintiffs were exempt as, *inter alia*, outside sales employees, highly compensated employees, and/or administrative employees at all relevant times, (ii) that to the extent Citi misclassified HLSs, it was done in good faith reliance on Department of Labor guidance under 29 U.S.C. §259, *see* DOL Opinion Letter, FLSA 2006-31; *Mortgage Bankers Ass'n v. Harris*, 720 F.3d 966 (D.C. Cir. 2013) (holding that the DOL's Administrative Interpretation that had reversed the DOL's position in FLSA 2006-31 that loan officers are exempt administrative employees was invalid and vacated); *Henry v. Quicken Loans Inc.*, 2009 WL 3199788, at *13 (E.D. Mich. Sept. 30, 2009) (granting summary judgment based on section 259 defense for mortgage loan officers where defendants relied upon FLSA 2006-31), and (iii) that Plaintiffs did not work the volume of hours alleged in the Complaint.  *Id.* at ¶ 44.

Class Counsel and Citi each submitted lengthy mediation briefs that explored the merits and the scope of damages.  All told, the Parties were able to come to the mediation with a sense of and appreciation for the Class Members' claims and Citi's potential liability.  Although the Parties could obtain additional information in discovery, it is extremely unlikely that full discovery would have changed the Parties' analysis.  Gottlieb Decl., at ¶ 43.  *See Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information regarding the defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive.").

Against this backdrop, this factor favors preliminary approval.

### 4. Plaintiffs Would Face Real Risks at Trial if This Case Proceeded (*Factors 4 and 5*)

Although the Named Plaintiffs and Class Counsel believe the case is strong, it is subject to considerable risk. It hardly needs to be mentioned that "[l]itigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).

A trial on the merits in this matter would involve significant risks. Plaintiffs would have to overcome Citi's defenses, including, but not limited to:

- That some or all Class Members were exempt "outside sales" employees; *see* DOL Opinion Letter, FLSA 2006-11;

- That the Class Members who earned in excess of $100,000 per year were exempt as "highly-compensated" employees; *see* 29 C.F.R. § 541.601;

- That some or all Class Members alternatively were exempt "administrative" employees; *see* DOL Opinion Letter, FLSA 2006-31; *Mortgage Bankers Ass'n v. Harris*, 720 F.3d 966 (D.C. Cir. 2013);

- That certain Class Members were exempt "executive" employees; *see* 29 C.F.R. § 541.100;

- That some or all Class Members were exempt under the "combination exemption"; *see* 29 C.F.R. § 541.708;

- That to the extent Citi misclassified HLSs, it was done so in good faith reliance on Department of Labor guidance under 29 U.S.C. §259; *see Henry v. Quicken Loans Inc.*, 2009 WL 3199788, at *13 (E.D. Mich. Sept. 30, 2009) (granting summary judgment to defendant based on section 259 defense for mortgage loan officers where defendants relied upon FLSA 2006-31); and

- That the Class Members did not work the volume of hours alleged.

Gottlieb Decl., at ¶ 44. Indeed, at least one jury has found loan officers administratively exempt, a finding that was upheld on appeal. *See Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 902 (6th Cir. 2012). Moreover, Citi has already obtained affidavits from certain Class Members that arguably bolsters certain exemption defenses. *Id.* at ¶ 45. While Plaintiffs believe they would ultimately establish Citi's liability, Class Counsel is experienced and realistic, and understands

that the outcome at trial and the inevitable appeals process are inherently uncertain in terms of

outcome and duration. The proposed Settlement alleviates these uncertainties. *Id.* at ¶ 46. This

factor, thus, weighs in favor of preliminary approval.

### 5.   Maintaining the Class Through Trial Would Not Be Simple (*Factor 6*)

The risk of decertification and/or obtaining class certification and maintaining it through

trial is also present. Citi has argued throughout this litigation that individualized inquiries into

Plaintiffs' duties will require decertification and preclude decertification. Although Class

Counsel disagrees, this risk is particularly present here as some courts have decertified loan

officer class actions. *See e.g. Morano v. Intercontinental Capital Grp., Inc.*, 2012 WL 2952893,

at *8 (S.D.N.Y. July 17, 2012) (decertifying an off-the-clock collective action of loan officers);

*Wong v. HSBC Mortg. Corp.*, 2010 WL 3833952, at*2-4 (N.D. Cal. Sept. 29, 2010) (decertifying

collective action of loan officers due to individualized determinations of exempt status);

*Oetinger v. First Residential Mortg. Network*, 2009 WL 2162963, at *3 (W.D. Ky. July 16,

2009) (decertifying a collective action of allegedly misclassified mortgage loan bankers).

Citi would likely argue that specific factual inquiry will be necessary into, *inter alia*, (1)

the degree of independent judgment and discretion exercised, (2) the types of clients and advice

given, (3) if and whether time was spent supervising other employees, (4) whether and how much

time was spent out of the office engaging in sales and marketing, (5) whether each Class

Member worked in a retail sales or service establishment, (6) whether each Class Member had

advanced knowledge required to perform their duties, and/or (7) whether each Class Member

ever earned $100,000 or more annually. Moreover, Citi has obtained affidavits from certain

Class Members that arguably supports the need for individualized inquires. *See* Gottlieb Decl.,

at ¶ 49.  In addition, Citi would likely be aided by recent precedent such as *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) and *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).

The determination as to whether class and/or collective treatment is appropriate would likely be reached only after extensive and costly discovery and motion practice.  Risk, expense and delay permeate the class certification process.  Settlement eliminates this risk, expense and delay.  Accordingly, this factor favors preliminary approval.

### 6.  Defendants' Ability to Withstand a Greater Judgment Is Not a Bar to the Settlement (*Factor 7*)

Here, collectability against Citi is not at issue.  Class Counsel and the Named Plaintiffs are aware that Citi are able to pay virtually any judgment they can obtain, and still believe that the Settlement is in the best interests of the Class Members given all the attendant risks and rewards.  Accordingly, this factor also favors preliminary approval.

### 7.  The  Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Factors 8 and 9*)

Citi has agreed to settle this case for a maximum total of $4,650,000.  The Settlement amount represents a fair value to the Class Members given the attendant risks of litigation, even though recovery could be greater if Plaintiffs attained class certification, succeeded on all claims at trial, survived decertification and survived an appeal.

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'"  *Frank*, 228 F.R.D. at 186.  "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Id.*  "It is well settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the

settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 628 (9th Cir. 1982); *see also Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where "best possible recovery would be approximately $121 million"). Furthermore, when settlement assures immediate payment of substantial amounts to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Teachers' Ret. Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814(LAP), 2004 WL 2997957, at *5 (S.D.N.Y. May 14, 2004).

Weighing the benefits of the settlement against the available evidence and the risks associated with litigation, the Settlement amount is reasonable and represents a fair value to Class Members. As noted above, the total maximum Settlement Amount is $4,650,000. The Named Plaintiffs have been advised of the potential upside of proceeding on the merits, but believe the Settlement is in the best interests of the Class Members. Gottlieb Decl., at ¶ 54. Class Counsel agrees. *Id.* at ¶ 54. Moreover, experienced labor mediator Michael Dickstein presided over the mediation and helped bring the Parties to a resolution, which further demonstrates the fairness of the process and outcome. *Id.* at ¶ 55. At the time of final approval briefing, the Parties can provide additional information concerning the value of this recovery relative to realistic exposure and how this recovery compares to similar settlements approved by courts.

Therefore, this factor also weighs in favor of preliminary approval and, because the Settlement, on its face, is "fair, adequate, and reasonable, and not a product of collusion," (*Frank*, 228 F.R.D. at 184), the Court should grant preliminary approval.

## IV.   PROVISIONAL CERTIFICATION IS APPROPRIATE

For settlement purposes, Plaintiffs seek to certify the following proposed FLSA

Collective and State Law Class:

- **FLSA Collective:** All persons who were or are employed by Citi nationwide as a Home Lending Specialist at any time between March 1, 2011, and September 15, 2013, who either previously submitted a consent form to become an Opt-In Plaintiff and/or who timely submits a claim form.

- **State Law Class:** All persons who were employed by Citi nationwide as a Home Lending Specialist at any point between April 8, 2005, and September 15, 2013, if they worked in New York; between April 8, 2008, and September 15, 2013, if they worked in California; or between March 1, 2011, and September 15, 2013, if they worked in any other state (and not New York or California).

Gottlieb Decl., Ex. H at 1.16, 1.34.  As discussed below, these Proposed Classes meet the

requirements for class certification, and Citi consents to provisional certification for settlement

purposes only.

Conditional settlement approval, provisional class certification and appointment of Class

Counsel have several practical purposes, including avoiding the costs of litigating class status

while facilitating a global settlement, ensuring notification to all Class Members of the terms of

the proposed Agreement, and setting the date and time of the final approval hearing.  *See In re*

*GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 at 790-92 (3d Cir. 1995)

(conditionally certifying multi-state classes and granting preliminary approval).

The Court already certified the FLSA Collective, and Plaintiffs assert that the State Law

Class meets all Rule 23 standards.  Under Rule 23(a), a class action may be maintained if all of

the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b).  Rule 23(a) requires:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the court to find that:

> questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

*Id.* at (b)(3).  "In the Second Circuit, 'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility.'"  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006).  Given that there will be no trial, the Court need not consider the manageability requirement of Federal Rule 23(b)(3)'s superiority prong in order to approve this settlement.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### A.    <u>Numerosity</u>

There are approximately 840 potential Class Members, which courts have found to be more than sufficient for numerosity.  *See e.g. Novella v. Westchester County*, 443 F. Supp. 2d 540, 546-47 (S.D.N.Y. 2006) (class of 24 sufficient).

### B.    <u>Commonality</u>

The purpose of the commonality requirement is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  *Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983).  Courts question whether there is a "unifying thread" among the claims.  *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).

Plaintiffs have alleged that the claims of the Named Plaintiffs and Class Members clearly have several common issues, including (i) whether they were exempt from the overtime laws during the Reclassification Period, (ii) whether they worked in excess of 40 hours per week, (iii) whether Citi failed to pay off-the-clock wages in the Post-Reclassification Period, (iv) whether Citi acted in good faith reliance on administrative guidance in not paying overtime during the Pre-Reclassification Period, (v) whether they were provided with uninterrupted meal and rest periods, (vi) whether they were provided all vested vacation pay, (vii) whether they were provided accurate wage statements, and (vii) whether they were paid all wages owed upon termination of employment. Gottlieb Decl., Ex. B.  Courts have found similar questions to establish the commonality requirement.  *See e.g. Aponte v. Comprehensive Health Mgmt. Inc.*, No. 10 Civ. 4825(PKC), 2011 WL 2207586, at *9 (S.D.N.Y. June 2, 2011) (commonality where common questions included "whether defendant has failed to compensate class members for work performed in excess of forty (40) hours per workweek and whether defendant has a policy of misclassifying its Benefit Consultants as exempt from coverage of the overtime provisions of the NYLL").

## C.  **Typicality**

Rule 23 requires that the claims of the representative be typical of the claims of the class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. "Minor variations . . . underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Here, the Named Plaintiffs have alleged that their claims arise from the same factual and legal circumstances of the Class Members' claims in that they (i) were employed in

the same job titles, (ii) had similar job duties and responsibilities, (iii) were paid by Citi under the same wage practices and policies, and (iv) were all uniformly reclassified at the same time. Gottlieb Decl., Ex. B.

### D.     Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  In part, "the adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237(WHP), 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007).  Here, there has been no assertion that Named Plaintiffs have interests that are antagonistic to or at odds with those of Class Members.  Rather, the Named Plaintiffs and Opt-In Plaintiff Allison Singer have shown their commitment to the Plaintiffs during the litigation by: (i) reviewing and approving pleadings and other filings, (ii) searching for and providing documents, (iii) reviewing documents and information provided by Defendant, (iv) meeting and communicating with Class Counsel at all phases of the litigation, (v) preparing for, attending and actively participating in the mediation, and/or (vi) undertaking the risk of retaliation.  Gottlieb Decl., at ¶ 57.

### E.     Certification Is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

### 1. Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007). Plaintiffs contend that the essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. Cnty. of Montgomery*, 227 F.R.D. 159, 173 (N.D.N.Y. 2005). Plaintiffs also contend that because a defense "may arise and [] affect different class members differently does not compel a finding that individual issues predominate over common ones." *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 339 (S.D.N.Y. 2004). Finally, Plaintiffs contend that where claims are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied. *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, Named Plaintiffs assert that the Class Members' core factual allegations and legal theories predominate over any factual or legal variations among Class Members. *See Torres v. Gristede's Corp.*, No. 04 Civ. 3316(PAC), 2006 WL 2819730 (S.D.N.Y. Sept. 29, 2006), at *16 (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages.").

### 2. A Class Action Is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis is a relative comparison examining whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule

23(b)(3) sets forth a non-exclusive list of factors pertinent to superiority, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring individual actions; and the desirability of concentrating the litigation of the claims in the particular forum.  Plaintiffs contend that class adjudication of this case by settlement is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members.  *Khait v. Whirlpool Corporation*, No. 06-6381(ALC), 2010 WL 2025106, at *3 (E.D.N.Y. Jan. 20, 2010).  Here, Plaintiffs contend that the resources that will be conserved is enormous, given that there would otherwise be not only a federal class action, but also likely be dozens of individual arbitrations being litigated across the country, many of which could lead to contested motions for judicial award confirmation and/or appeals.  Gottlieb Decl., at ¶ 60.  Plaintiffs also contend that concentrating the litigation in this Court for settlement is desirable because Citi conducts a substantial amount of their business and many Class Members reside within this jurisdiction.  Moreover, Plaintiffs contend that many Class Members likely do not have resources to litigate these claims individually.  *Id.* at ¶ 61.  In addition, Plaintiffs contend that employing the class device in the context of this Settlement will avoid the waste and delay of potentially repetitive proceedings and inconsistent judgments.

## V.      PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Wigdor LLP should be appointed as Class Counsel.  *Id.* at ¶ 62.  Rule 23(g) sets forth four criteria the district court should consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action", (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action", (3) "counsel's knowledge of the applicable law", and (4) "the resources

that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).  The Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.  Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs contend that Wigdor LLP has met these criteria.  *Id.* at ¶ 63.  Plaintiffs contend that Wigdor LLP has done substantial work identifying, investigating and prosecuting the Class Members' claims.  Additionally, Plaintiffs contend that Wigdor LLP has substantial experience prosecuting and settling employment class actions, including wage and hour class actions, is well-versed in wage and hour and class action law, and is well-qualified to represent the interests of the class.  *Id.* at ¶ 64.  Finally, as will be clear when Class Counsel files its motion seeking the Court's approval for attorneys' fees and reasonable litigation costs, Wigdor LLP has committed substantial resources to this action.  *Id.* at ¶ 64.  Thus, Wigdor LLP should be appointed Class Counsel.

## VI.   <u>THE PROPOSED NOTICE AND AWARD DISTRIBUTION ARE FAIR</u>

The content of the Proposed Notice fully complies with due process and Federal Rule of Civil Procedure 23.  Pursuant to Rule 23(c)(2)(B), a class action notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)    the nature of the action;
> (ii)   the definition of the class certified;
> (iii)  the class claims, issues, or defenses;
> (iv)   that a class member may enter an appearance through an attorney if the member so desires;
> (v)    that the court will exclude from the class any member who requests exclusion;
> (vi)   the time and manner for requesting exclusion; and
> (vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

The Proposed Notice satisfies each of these requirements. Gottlieb Decl., Ex. H at Ex. 1. Additionally, it describes the terms of the Agreement as well as the date, time, and place of the final approval hearing, how to object, and how to opt-out, and also details the proposed fees/costs award and enhancement payments. *Id.* Courts have approved class notices even when they provided only general information about a settlement. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally.").

Lastly, the Settlement Amount distribution is fair. Participating Claimants will receive a portion of the Settlement Amount based on the amount of compensation earned during the relevant period. Gottlieb Decl., Ex. H at 2.2. This is appropriate as the amount of compensation earned directly correlates with the amount of damages for unpaid overtime or off-the-clock wages. The rate of recovery is multiplied by a factor of six for the Pre-Reclassification Period relative to the Post-Reclassification Period, given that the Citi employed a time tracking system in the Post-Reclassification Period and paid straight time and overtime wages for approved and reported hours. However, Plaintiffs have alleged that certain off-the-clock hours still remained uncompensated. The Pre-Reclassification Period potential damages are far greater than that of the Post-Reclassification Period potential damages, in addition to the additional defenses Citi can assert to the Post-Reclassification off-the-clock claims. From Class Counsel's analysis, in conjunction with discussions with the Named Plaintiffs and other Class Members, the six time multiplier for Pre-Reclassification Period is fair and appropriate. Gottlieb Decl., at ¶ 65.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs and Citi respectfully request that the Court grant preliminary approval of the attached proposed Stipulation and Settlement Agreement.

Dated: October 31, 2014
      New York, New York

Respectfully submitted,

WIGDOR LLP

By: _____/s/_____
      Douglas H. Wigdor
      David E. Gottlieb

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845
dwigdor@wigdorlaw.com
dgottlieb@wigdorlaw.com

*Counsel for Plaintiffs and
Proposed Class Counsel*

MORGAN LEWIS & BOCKIUS LLP

By: _____/s/_____
      Sam S. Shaulson

101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6718
Facsimile: (212) 309-6001
sshaulson@morganlewis.com

*Counsel for Defendants*