**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X

|  |  |  |
|---|---|---|
| TARA RANIERE, NICHOL BODDEN, MARK A. VOSBURGH, STEVEN HUMPHRIES, MARY LARA, and BILL FARMER,  on behalf of themselves individually, and on behalf of all, similarly-situated persons, | : : : : : : | Civil Action No. 11-cv-2448 (RWS)(AJP) |
|  | : |  |
| Plaintiffs, | : : | **DECLARATION OF** |
|  | : | **DAVID E. GOTTLIEB** |
| v. | : |  |
|  | : |  |
| CITIGROUP INC., CITIBANK, N.A., and CITIMORTGAGE INC., | : : |  |
|  | : |  |
| Defendants. | : |  |

--------------------------------------------------------------------X

I, David E. Gottlieb, pursuant to 28 U.S.C. § 1746, declare and state as follows:

I am an attorney duly admitted to practice law in the Southern District of New York and am a partner at the law firm of Wigdor LLP ("Class Counsel"), attorneys for Plaintiffs Tara Raniere, Nichol Bodden, Mark Vosburgh, Steven Humphries, Mary Lara and Bill Farmer (together "Named Plaintiffs") on behalf of themselves and the proposed FLSA Collective and State Law Class (both defined below) (collectively "Class Members" or "Plaintiffs").

## ATTACHED DOCUMENTS

1.      A true and accurate copy of the Complaint filed in this action (the "Complaint") is attached hereto as **Exhibit A**.

2.      A true and accurate copy of the First Amended Complaint filed in this action (the "Amended Complaint") is attached hereto as **Exhibit B**.

3.      A true and accurate copy of the November 22, 2012 Opinion and Order by Judge Robert W. Sweet (the "11/22/12 Decision") is attached hereto as **Exhibit C**.

4.      A true and accurate copy of the S.D.N.Y. Docket Sheet in this action (the "Docket Sheet") is attached hereto as **Exhibit D**.

5.      A true and accurate copy of the Citi's revised January 2011 Arbitration Policy (the "Arbitration Policy") is attached hereto as **Exhibit E**.

6.      A true and accurate copy of the Second Circuit Court of Appeals Docket Sheet in this action (the "2d Circuit Docket Sheet") is attached hereto as **Exhibit F**.

7.      A true and accurate copy of the Second Circuit Decision in this action (the "Second Circuit Opinion") is attached hereto as **Exhibit G**.

8.      A true and accurate copy of the Stipulation and Settlement Agreement (the "Settlement Agreement") in this action is attached hereto as **Exhibit H**.

9.      A true and accurate copy of the Proposed Notice to all Class Members ("Proposed Notice") in this action is attached hereto as **Exhibit I**.

10.      A true and accurate copy of the Proposed Order for Preliminary Approval ("Proposed Order") in this action is attached hereto as **Exhibit J**.

## ALLEGATIONS OF THE COMPLAINT

11.      The Named Plaintiffs and the Class Members they seek to represent were and/or are employed by Defendants CitiMortgage, Inc., Citigroup Inc. and Citibank, ("Citi") in the United States as Home Lending Specialists ("HLSs") during applicable time periods for the FLSA Collective and State Law Class.  In carrying out their duties, Plaintiffs often worked in excess of 40 hours per week.

12.      Prior to July 18, 2010, Citi classified Plaintiffs as "exempt" from the overtime requirements of the FLSA and applicable state laws.  As such, Citi did not pay any premium overtime compensation for hours worked in excess of 40 hours per week.  However, on or about

July 18, 2010, Citi reclassified Plaintiffs as "non-exempt." Thereafter, Plaintiffs allege that they

began receiving some compensation for overtime hours worked. However, the Named Plaintiffs

have alleged that this compensation routinely fell short of what is required because they were

permitted and/or encouraged to work off-the-clock hours, while at the same time being

discouraged from reporting the full amount of their working time. Therefore, the Named

Plaintiffs have alleged that even after July 18, 2010, Plaintiffs are owed unpaid overtime

compensation and unpaid off-the-clock time.

13.     In addition, Plaintiffs allege that they were not provided with uninterrupted meal

and rest periods, they were not provided all vested vacation pay, they were not provided accurate

wage statements, and they were paid all wages owed upon termination of employment.

## PROCEDURAL HISTORY

14.     On April 8, 2011, Named Plaintiffs Raniere, Bodden and Vosburgh commenced

this action, through the filing of the Complaint. Shortly thereafter, substantial motion practice

ensued:

- Citi moved to dismiss the action on the basis of the "first filed rule," arguing that, *inter alia*, a previously action filed precluded this action. This motion was fully briefed on June 2, 2011. *See* Dkt. Nos. 13, 29 and 53.

- Citi moved to compel individual arbitration as to Named Plaintiffs Raniere and Bodden, arguing that, *inter alia*, an arbitration agreement with a class/collective waiver expressly precluded their class/collective claims. This motion was fully briefed on June 2, 2011.[1] *See* Dkt. Nos. 27, 46 and 58.

- The Named Plaintiffs moved for nationwide conditional certification of the FLSA collective claims. This motion was fully briefed on June 27, 2011. *See* Dkt. Nos. 17, 31 and 68.

---

[1]     Citi issued a revised arbitration policy in January 2011 that included a class and collective action waiver. Plaintiff Vosburgh was no longer employed at Citi when the new arbitration policy was issued.

15.     On November 22, 2012, the Court denied Citi's motion to dismiss, denied Citi's motion to compel arbitration and granted the Named Plaintiffs' motion for conditional certification.

16.     In early January 2013, Class Counsel sent notices of pendency to more than 200 potential collective members.  During the 75 day opt-in period, 85 individuals opted-in, together with the three original Named Plaintiffs and eight pre-conditional certification opt-ins, totaling 96 individuals ("Opt-In Plaintiffs").

17.     Contemporaneously with the opt-in period, Citi appealed the denial of the motion to compel individual arbitration as to Plaintiffs Raniere and Bodden.  Citi also sought a stay of the District Court proceedings.

18.     Thus, Class Counsel and Citi negotiated a stay of the District Court proceedings, subject to continuation of the opt-in period and the agreed exchange of certain informal discovery. The informal discovery consisted of Citi providing information and documents regarding (i) the individuals nationwide who worked as HLSs over the relevant periods, (ii) compensation information for all HLSs over the relevant periods, (iii) the announcement of HLSs being reclassified as overtime "non-exempt," and (iv) formal job description documents.  Class Counsel, in turn, agreed to provide Citi resumes, employment applications and online profiles of certain opt-in Plaintiffs describing their position.

19.     Citi's appeal to the Second Circuit was fully briefed on June 18, 2013.  Citi was joined by *amici* The Chamber of Commerce of the United States of America and the Society for Human Resource Management.  Named Plaintiffs Raniere and Bodden were joined by *amici* the National Employment Lawyers Association, the National Employment Law Project and The

Employee Rights Advocacy Institute for Law & Policy.  On August 12, 2013, the Second Circuit reversed the 11/22/12 Decision and remanded the action.

20.     On August 26, 2013, Class Counsel submitted a Petition for Rehearing *En Banc*.[2]

21.     As a result of the Second Circuit Opinion, Plaintiffs who were no longer employed at Citi as of January 2011, would likely have been able to continue pursuing their claims on a class and/or collective basis, subject to potential decertification of the FLSA collective action and the need for the Court to rule on class certification of the state law claims.  However, all Plaintiffs who were bound by the 2011 Arbitration Agreement would likely be required to pursue their claims on an individual basis in arbitration.  Thus, 25 Plaintiffs filed individual arbitrations in the weeks following the Second Circuit Opinion.

22.     In or around September 2013, the Parties agreed to attempt mediation and requested that the Petition for Rehearing *En Banc* be held in abeyance and that the district court proceedings be stayed.

23.     On February 10, 2014, the Parties attended a mediation with the highly accomplished employment mediator Michael Dickstein.  In attendance were Named Plaintiffs Raniere, Bodden and Vosburgh, Opt-In Plaintiff Allison Singer, and Class Counsel, as well as representatives from Citi and Citi's counsel.  At the mediation, the Parties reached a settlement in principle on behalf of an FLSA Collective and a State Law Class.  The Parties have since executed a full settlement agreement.

---

[2]     On October 15, 2013, the Second Circuit rejected a petition for rehearing of its decision in *Sutherland v. Ernst & Young LLP*, No. 12-304 (2d Cir. Aug. 9, 2013) – the companion case that was argued on appeal the same day as this case – in which the Second Circuit ruled that the ability to bring a collective action was a procedural right that could be waived.

## SUMMARY OF PROPOSED SETTLEMENT

24.     Citi has agreed to pay a maximum amount of $4,650,000 (the "Settlement Amount") to resolve this action on a class and collective basis.  The Settlement Amount will be the amount from which (i) all Plaintiffs who participate in the settlement ("Participating Claimants") shall receive their allocated share, (ii) Class Counsel will be compensated for their fees and reimbursed for expenses, (iii) the Named Plaintiffs and Opt-In Plaintiff Allison Singer will receive service payments ("Service Awards"), (iv) the costs of administrating the settlement will be paid, and (v) a reserve fund will be funded (the "Reserve Fund").   Ex. H at ¶¶1.35 *et seq.*

25.     Within thirty (30) days of the Effective Date the Claims Administrator will mail to each Participating Claimant his or her allocation from the Settlement Amount.  Citi will deposit an amount sufficient to pay the claims from the Settlement Amount with the Claims Administrator no later than 14 days before that date.  Ex. H at ¶2.7.1.

26.     The portion of the Settlement Amount to be distributed to each Participating Claimants will be determined using the following allocation formula:

- First, the "Total Weighted Pre-Reclassification Compensation" will be computed by totaling the compensation of all Class Members, from July 17, 2010, back to: April 8, 2005, if they worked in New York; April 8, 2008, if they worked in California; or as to the FLSA Opt-Ins, back to the beginning of each of their state's maximum limitations period (six years if they worked in New York, four years if they worked in worked California – but no earlier than April 8, 2008, only for those who worked in California – or three years if they worked in any other state and not New York or California) measured back from when they filed their consent form, and then multiplying that total by six (6).  Class Members who were employed by Defendant as an HLS in any state other than California or New York (except the FLSA Opt-Ins) will have zero pre-reclassification compensation;

- Second, the "Total Post-Reclassification Compensation" will be computed by totaling the compensation of all Class Members since July 18, 2010 (but since March 1, 2011, for Class Members who were employed by Defendant as an HLS in any state other than California or New York, except the FLSA Opt-Ins), through the date of Preliminary Approval;

- <u>Third</u>, the Total Weighted Pre-Reclassification Compensation will be added to the Total Post-Reclassification Compensation to compute the "Combined Total Compensation" of all Class Members;

- <u>Fourth</u>, each Class Member's "Individual Weighted Pre-Reclassification Compensation" will be computed by totaling the Class Member's compensation from July 17, 2010, back to: April 8, 2005, if they worked in New York; April 8, 2008, if they worked in California; or as to the FLSA Opt-Ins, back to the beginning of each of their state's maximum limitations period (six years if they worked in New York, four years if they worked in worked California – but no earlier than April 8, 2008, only for those who worked in California – or three years if they worked in any other state and not New York or California) measured back from when they filed their consent form, and then multiplying that total by six (6). Class Members who were employed by Defendant as an HLS in any state other than California or New York (except the FLSA Opt-Ins) will have zero pre-reclassification compensation;

- <u>Fifth</u>, each Class Member's "Individual Post-Reclassification Compensation" will be computed by totaling the Class Member's compensation from July 18, 2010 (but since March 1, 2011, for Class Members who were employed by Defendant as an HLS in any state other than California or New York, except the FLSA Opt-Ins), through the date of Preliminary Approval;

- <u>Sixth</u>, each Class Member's Individual Weighted Pre-Reclassification Compensation will be added to his or her Individual Post-Reclassification Compensation to compute the Class Member's "Combined Individual Compensation"; and

- <u>Finally</u>, each Class Member's Combined Individual Compensation will be divided by the Combined Total Compensation to determine the Class Member's *pro rata* allocation percentage.

Ex. H at ¶2.2.1.

27.     This formula is based on substantial discovery and is reflective of, *inter alia*, the approximate differential in alleged damages sustained by Class Members during the Post-Reclassification Period relative to the Pre-Reclassification Period, as well as the relative legal and factual hurdles to establishing liability in the respective periods.

28.     The Parties have mutually agreed to select Garden City Group (the "Claims Administrator" or "GCG") to administer the Settlement. As stated above, GCG's fees will be

paid from the Settlement Amount.  Within fifteen (15) days after preliminary approval is granted

by the Court, GCG will mail the Proposed Notice to all Class Members.  GCG will also handle

the receipt of the claims forms sent in by the Class Members.  Following final approval of the

Settlement by the Court, GCG will administer the Settlement with supervision, oversight and

communication by the Parties.

29.     The eligible Class Members include any individual who worked for Citi as an HLS

from (i) April 8, 2005, to September 15, 2013 if they worked in New York, (ii) April 8, 2008, to

September 15, 2013, if they worked in California, (iii) March 1, 2011, to September 15, 2013, if

they worked in any other state (and not New York or California); or (iv) as to the Opt-In

Plaintiffs, from the beginning of each of their state's maximum limitations period (six years if

they worked in New York, four years if they worked in worked California – but no earlier than

April 8, 2008, only for those who worked in California – or three years if they worked in any

other state and not New York or California) measured back from when they filed their consent

form, to September 15, 2013.

30.     Section 2.8 of the Agreement contemplates the following with regard to releases:

- Class Members who timely submit valid claims forms will release all federal and state law wage and hour claims for the entire applicable federal and state statute of limitations period from (i) April 8, 2005 if they worked in New York, (ii) April 8, 2008 if they worked in California, (iii) March 1, 2011 if they worked in any other state (and not New York or California); or (iv) as to the Opt-In Plaintiffs, from the beginning of each of their state's maximum limitations period (six years if they worked in New York, four years if they worked in worked California, or three years if they worked in any other state and not New York or California) measured back from when they filed their consent form.

- Class Members who do not timely submit valid claims forms, but do not opt-out of the Settlement, will release all state law wage and hour claims for the entire applicable state statute of limitations period from (i) April 8, 2005 if they worked in New York, (ii) April 8, 2008 if they worked in California, (iii) March 1, 2011 if they worked in any other state (and not New York or

California); or (iv) as to the Opt-In Plaintiffs, from the beginning of each of their state's maximum limitations period (six years if they worked in New York, four years if they worked in worked California, or three years if they worked in any other state and not New York or California) measured back from when they filed their consent form.  However, Class Members who do not timely submit valid claims forms, but do not opt-out of the Settlement, will not release any federal claims under the FLSA.

- Each Named Plaintiff and opt-in plaintiff Allison Singer will provide a general release of all claims against Citi.

31.    Citi will establish an $80,000 Reserve Fund from the Settlement Amount, which will be used to make payments to Class Members who file late claims, who dispute their allocation, who were not identified as Class Members but have a good faith claim for participation, or for any other reasonable purpose necessary to effectuate the Settlement.

32.    Class Counsel will apply to the Court for an award of attorneys' fees of up to 33 and 1/3% of the Settlement Amount, as well as reasonable litigation costs and expenses not to exceed $60,000.  Class Counsel represent that the attorneys' fees that they will seek will be reasonable and will be consistent with methods for determining attorneys' fees awards in the Second Circuit.  However, the Court need not decide the attorneys' fees and costs issue at this point as such determination need only be made after Plaintiffs have had the opportunity to consider the terms of the Settlement, when the Parties seek final approval of the Settlement.

33.    The Named Plaintiffs and Opt-In Plaintiff Singer are seeking enhanced Service Awards in recognition of services rendered to the Class Members, including: (i) reviewing and approving pleadings and other filings, (ii) searching for and providing documents, (iii) reviewing documents and information provided by Defendant, (iv) meeting and communicating with Class Counsel at all phases of the litigation, (v) preparing for, attending and actively participating in the mediation, and/or (vi) undertaking the risk of retaliation. Named Plaintiffs Tara Raniere, Nichol Bodden and Mark Vosburgh will seek approval for $20,000 each, Opt-In Plaintiff Allison Singer

will seek approval for $15,000 and Named Plaintiffs Steven Humphries, Mary Lara and Bill

Farmer will seek approval for $7,500 each.

## ADDITIONAL REPRESENTATIONS

34.     Absent resolution, Plaintiffs Raniere and Bodden would proceed with their Petition

For Rehearing *En Banc*, and if that is denied, would likely appeal to the Supreme Court.  Citi

would likely seek a continued stay of the district court proceedings until any and all appeals were

resolved, which could take many months if not longer.  These appeals would be complex and time

consuming and require significant resources of all Parties and the judiciary.

35.     Appeals aside, the continued litigation of this matter would be complex and time

consuming.  Here, there are approximately 840 Class Members, covering a period of up to more

than six years, each of whom has claims under various federal and state laws.  Absent resolution,

approximately 670 of these Class Members would be obligated to pursue their claims in

individual arbitrations, while the remaining approximately 198 Class Members would seek to

continue to pursue their claims before the Court.  That is, continued litigation would involve

dozens of potential parallel individual arbitrations in arbitration venues across the country,

together with a federal class and/or collective action before the Court.

36.     Discovery in these potential arbitrations and the federal class and/or collective

action would likely be costly and lengthy.  Indeed, the Parties engaged in targeted, pre-mediation

discovery, and even in such abbreviated form consisted of, *inter alia*, the exchange and analysis

of information and documents regarding (i) the individuals who worked as HLSs over the relevant

periods, (ii) compensation information for all HLSs over the relevant periods, (iii) the

announcement of Plaintiffs being reclassified as overtime "non-exempt," and (iv) formal job

description documents.  Class Counsel provided Citi with resumes, employment applications and

online profiles of certain opt-in Plaintiffs describing the duties of their position.  Moreover, this discovery required substantial analysis.

37.     While the targeted discovery to date has been expansive, it pales in comparison to discovery required for class certification and on the merits.  In full discovery, the Parties would likely seek numerous depositions on issues regarding, *inter alia*, Citi's wage practices, the Class Members' job duties, Citi and Plaintiffs' time keeping practices, and Plaintiffs' hours worked. Moreover, the Class Members would likely seek discovery related to the decision to classify the Class Members as "exempt" and/or "non-exempt" during various periods, which is likely to result in substantial motion practice regarding privilege issues.

38.     Following this, and other, additional discovery, there would likely be contested motions for class certification and motions for summary judgment.  Thereafter, preparing for and putting on evidence at a trial would be lengthy and complex.  Even after a potential judgment at trial, any judgment likely would be appealed, further extending the litigation. Settlement, on the other hand, makes monetary relief available in a prompt, efficient and relatively risk-free manner.

39.     Although notice of the Settlement has not yet been issued to the Class Members, the Named Plaintiffs have all expressed their approval of the Settlement by signing the Agreement.

40.     The Parties have conducted substantial discovery which is more than sufficient to resolve the action responsibly, including: (i) Citi provided Class Counsel with a list of all individuals who worked as HLSs over the relevant periods; (ii) Citi has provided Class Counsel with Microsoft Excel spreadsheets containing compensation information over the relevant periods; (iii) Citi provided Class Counsel documents concerning the announcement of Plaintiffs being reclassified from overtime "exempt to overtime "non-exempt"; (iv) Citi provided Class

Counsel formal job description documents; (v) Class Counsel provided Citi with documents describing Plaintiffs' duties as an HLS; and (vi) Class Counsel had access to the opt-in Plaintiffs to interview them regarding their experiences, including their work hours.

41.     Moreover, all of this information and data Citi provided was then analyzed by Class Counsel with involvement from the Named Plaintiffs.  Class Counsel was able to reasonably approximate, *inter alia*, (i) the total cumulative income earned by the Class Members, (ii) the estimated amount of unpaid overtime for the Class Members, and (iii) the estimated potential liquidated damages.  These figures enabled Class Counsel to determine a reasonable and reliable estimate of class-wide damages.

42.     Of course, Citi has articulated potentially strong defenses that – while Class Counsel felt confident could be overcome -- needed to be considered.  Citi has asserted various defenses, including but not limited to: (i) that the Plaintiffs were exempt as, *inter alia*, outside sales employees, highly compensated employees, and/or administrative employees at all relevant times; (ii) that to the extent Citi misclassified HLSs, it was done in good faith reliance on Department of Labor guidance; and (iii) that Plaintiffs did not work the volume of hours alleged in the Complaint.

43.     Class Counsel and Citi each submitted lengthy mediation briefs that explored the merits and the scope of damages.  All told, the Parties were able to come to the mediation with a sense of and appreciation for the Class Members' claims and Citi's potential liability.  Although the Parties could obtain additional information in discovery, it is extremely unlikely that full discovery would have changed the Parties' analysis.

44.     A trial on the merits in this matter would involve significant risks.  Citi has asserted various defenses, including, but not limited to: (i) that the Plaintiffs were exempt as, *inter*

*alia*, outside sales employees, highly compensated employees, administrative employees, executive employees, and/or a combination of these, at all relevant times, (ii) that to the extent Citi misclassified HLSs, it was done in good faith reliance on Department of Labor guidance under 29 U.S.C. §259, *see* DOL Opinion Letter, FLSA 2006-31; *Mortgage Bankers Ass'n v. Harris*, 720 F.3d 966 (D.C. Cir. 2013) (holding that the DOL's Administrative Interpretation that had reversed the DOL's position in FLSA 2006-31 that loan officers are exempt administrative employees was invalid and vacated); *Henry v. Quicken Loans Inc.*, 2009 WL 3199788, at *13 (E.D. Mich. Sept. 30, 2009) (granting summary judgment based on section 259 defense for mortgage loan officers where defendants relied upon FLSA 2006-31), and (iii) that Plaintiffs did not work the volume of hours alleged in the Complaint.

45. Moreover, Citi has already obtained affidavits from certain Class Members that arguably bolsters certain exemption defenses.

46. While Plaintiffs believe they would ultimately establish Citi's liability, Class Counsel is experienced and realistic, and understands that the outcome at trial and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed Settlement alleviates these uncertainties.

47. The risk of decertification and/or obtaining class certification and maintaining it through trial is also present. Citi has argued throughout this litigation that individualized inquiries into Plaintiffs' duties will require decertification and preclude decertification. Although Class Counsel disagrees, this risk is particularly present here as some courts have decertified loan officer class actions.

48. Citi would likely argue that specific factual inquiry will be necessary into, *inter alia*, (1) the degree of independent judgment and discretion exercised; (2) the types of clients and

advice given; (3) if and whether time was spent supervising other employees; (4) whether and how much time was spent out of the office engaging in sales and marketing; (5) whether each Class Member worked in a retail sales or service establishment; (6) whether each Class Member had advanced knowledge required to perform their duties; and/or (7) whether each Class Member ever earned $100,000 or more annually.

49.     As stated, Citi has obtained affidavits from certain Class Members that arguably supports the need for individualized inquires.

50.     In addition, Citi would likely be aided by recent precedent such as *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) and *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011).

51.     The determination as to whether class and/or collective treatment is appropriate would likely be reached only after extensive and costly discovery and motion practice.  Risk, expense, and delay permeate the class certification process.  Settlement eliminates this risk, expense, and delay.

52.     Here, collectability against Citi is not at issue.  Class Counsel and the Named Plaintiffs are aware that Citi are able to pay virtually any judgment they can obtain, and still believe that the Settlement is in the best interests of the Class Members given all the attendant risks and rewards.

53.     The Settlement amount represents a fair value to the Class Members given the attendant risks of litigation, even though recovery could be greater if Plaintiffs attained class certification, succeeded on all claims at trial, survived decertification and survived an appeal.

54.     Weighing the benefits of the Settlement against the available evidence and the risks associated with litigation, the Settlement is reasonable and represents a fair value to Class Members.  The Named Plaintiffs have been advised of the potential upside of proceeding on the

merits, but believe the Settlement is in the best interests of the Class Members.  Class Counsel

agrees.

55.     Moreover, experienced labor mediator Michael Dickstein presided over the

mediation and helped bring the Parties to a resolution, which further demonstrates the fairness of

the process and outcome.

56.     For settlement purposes, Plaintiffs seek to certify the following proposed FLSA

Collective and State Law Class:

- **FLSA Collective:** All persons who were or are employed by Citi nationwide as a Home Lending Specialist at any time between March 1, 2011, and September 15, 2013, who either previously submit a consent form to become an Opt-In Plaintiff and/or who timely submits a claim form.

- **State Law Class:**  All persons who were or are employed by Citi nationwide as a Home Lending Specialist at any point between April 8, 2005, and September 15, 2013, if they worked in New York; between April 8, 2008, and September 15, 2013, if they worked in California; or between March 1, 2011, and September 15, 2013, if they worked in any other state (and not New York or California).

These Proposed Classes meet the requirements for class certification, and Citi consents to

provisional certification for settlement purposes only.

57.     Plaintiffs have alleged that the claims of the Named Plaintiffs and Class Members

clearly have several common issues, including (i) whether they were exempt from the overtime

laws during the Reclassification Period; (ii) whether they worked in excess of 40 hours per week;

(iii) whether Citi failed to pay off-the-clock wages in the Post-Reclassification Period; (iv)

whether Citi acted in good faith reliance on administrative guidance in not paying overtime

during the Pre-Reclassification Period, (v) whether they were provided with uninterrupted meal

and rest periods, (vi) whether they were provided all vested vacation pay, (vii) whether they were

provided accurate wage statements, and (vii) whether they were paid all wages owed upon

termination of employment.

58.     The Named Plaintiffs have alleged that their claims arise from the same factual and legal circumstances of the Class Members' claims in that they (i) were employed in the same job titles, (ii) had similar job duties and responsibilities, (iii) were paid by Citi under the same wage practices and policies, and (iv) were all uniformly reclassified at the same time.

59.     There has been no assertion that Named Plaintiffs have interests that are antagonistic to or at odds with those of Class Members.  Rather, the Named Plaintiffs and Opt-In Plaintiff Allison Singer have shown their commitment to the Plaintiffs during the litigation by: (i) reviewing and approving pleadings and other filings, (ii) searching for and providing documents, (iii) reviewing documents and information provided by Defendant, (iv) meeting and communicating with Class Counsel at all phases of the litigation, (v) preparing for, attending and actively participating in the mediation, and/or (vi) undertaking the risk of retaliation.

60.     Class adjudication of this case by settlement is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members.  Here, Plaintiffs contend that the resources that will be conserved is enormous, given that there would otherwise be not only a federal class action, but also likely be dozens of individual arbitrations being litigated across the country, many of which could lead to contested motions for judicial award confirmation and/or appeals.  Moreover, Plaintiffs contend that many Class Members likely do not have resources to litigate these claims individually.  In addition, Plaintiffs contend that employing the class device in the context of this Settlement will avoid the waste and delay of potentially repetitive proceedings and inconsistent judgments.

61.     Here, Named Plaintiffs assert that the Class Members' core factual allegations and legal theories predominate over any factual or legal variations among Class Members. Concentrating the litigation in this Court for settlement is desirable because Citi conducts a

substantial amount of their business and many Class Members reside within this jurisdiction. Moreover, many Class Members likely do not have resources to litigate these claims individually. In addition, employing the class device in the context of this Settlement will avoid the waste and delay of potentially repetitive proceedings and inconsistent judgments.

62.     Wigdor LLP should be appointed as Class Counsel.

63.     Wigdor LLP has met the appropriate criteria.

64.     Wigdor LLP has done substantial work identifying, investigating and prosecuting the Class Members' claims.  Additionally, Wigdor LLP has substantial experience prosecuting and settling employment class actions, including wage and hour class actions, is well-versed in wage and hour and class action law, and is well-qualified to represent the interests of the class. Finally, as will be clear when Class Counsel files its motion seeking the Court's approval for attorneys' fees and reasonable litigation costs, Wigdor LLP has committed substantial resources to this action.

65.     From Class Counsel's analysis, in conjunction with discussions with the Named Plaintiffs and other Class Members, the six time multiplier for Pre-Reclassification Period is fair and appropriate.

66.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated:  October 31, 2014
        New York, New York

_____
David E. Gottlieb

17