UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------X

TARA RANIERE, NICHOL BODDEN, MARK A.
VOSBURGH, STEVEN HUMPHRIES, MARY LARA,
and BILL FARMER, on behalf of themselves
individually and of all others similarly
situated,

                     Plaintiffs,            11 Civ. 2448 (RWS)

    -against-                          OPINION

CITIGROUP INC., CITIBANK, N.A., and
CITIMORTGAGE INC.,

                     Defendants.

---------------------------------------X

A P P E A R A N C E S:


        Attorneys for the Plaintiffs

        WIGDOR LLP
        85 Fifth Avenue, Fifth Floor
        New York, NY 10003
        By:  David Evan Gottlieb, Esq.
             Douglas Holden Wigdor, Esq.
             Kenneth P. Thompson, Esq.
             Tanvir Haque Rahman, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
FILED: 9/29/15

        Attorneys for the Defendants

        MORGAN, LEWIS & BOCKIUS LLP
        101 Park Avenue
        New York, NY 10178
        By:  Sam Scott Shaulson, Esq.
             Sharon A. Lisitzky, Esq.

Sweet, D.J.,

Plaintiffs Tara Raniere, Nichol Bodden, Mark A. Vosburgh, Steven Humphries, Mary Lara, and Bill Farmer (the "Named Plaintiffs") have moved on behalf of the proposed Settlement Class (collectively with the Named Plaintiffs, the "Plaintiffs") for final approval of a proposed settlement with Defendants Citigroup, Inc., Citibank, N.A., and CitiMortgage, Inc. (collectively, "Citi" or the "Defendants") and for class certification for settlement purposes, pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b).  Class Counsel, Wigdor LLP, has separately moved for an order approving a grant of attorney's fees and expenses.  For the reasons stated below, both motions are granted.

## Background and Prior Proceedings

Plaintiffs Raniere, Bodden, and Vosburgh initiated this action on April 8, 2011, alleging that they had been deprived of overtime pay in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"), and New York Labor Law § 190 et seq. (the "NYLL").[1]  (See generally Complaint, Dkt. No. 1.)

---

[1] A full recounting of the Complaint's allegations is available in the Court's November 22, 2011 Opinion.  See Raniere v. Citigroup, Inc., 827 F. Supp. 2d 294, 299-300 (S.D.N.Y. 2011).

Three major motions followed: Citi moved to dismiss the action on the basis of the "first filed rule," arguing that another previously-filed action preempted this one (Dkt. Nos. 11-13); Citi moved to compel arbitration with Plaintiffs Raniere and Bodden, arguing that they were covered by an arbitration provision that prevented them from filing the instant action (Dkt. Nos. 26-28); and the Named Plaintiffs moved for class certification (Dkt. Nos. 16-24).  By Order dated November 22, 2011, the Court denied the motion to dismiss, granted conditional class certification, and denied the motion to compel arbitration.  Raniere v. Citigroup Inc., 827 F. Supp. 2d 294 (S.D.N.Y. 2011).  Afterward, Class Counsel sent out notices of pendency to potential class members.  (Declaration of David Gottlieb, Dkt. No. 159 (the "Gottlieb Decl.")), ¶ 16.  85 individuals opted in; together with the three original Named Plaintiffs and eight conditional pre-certification opt-ins, the total number of plaintiffs rose to 96.  Id.

During the opt-in period, Citi appealed the denial of the motion to compel arbitration.  The Second Circuit reversed in a summary order dated August 12, 2013, remanding for further proceedings.  Raniere v. Citigroup Inc., 533 F. App'x 11 (2d Cir. 2013).  The Plaintiffs sought rehearing en banc, while 25 plaintiffs filed individual arbitrations after the Second Circuit opinion was issued.  (See Gottlieb Decl. ¶ 21.)  In or

around September, 2013, the parties agreed to attempt mediation and requested a stay.  On February 10, 2014, the parties met for a mediation session, and reached a settlement in principle. (Gottlieb Decl. ¶24.)

The parties later executed a full settlement agreement. Briefly summarized, in exchange for a release, Citi agrees to pay a maximum amount of $4,650,000, which is distributed among 1) the class based on an allocation formula that takes into account various individual factors, including the state in which each class member worked and its applicable limitations period; 2) class counsel, who will receive fees and be reimbursed for expenses; 3) the Named Plaintiffs and Opt-in Plaintiff Alison Singer, who will receive service awards; 4) the Garden City Group, to cover the costs of administering the settlement; and 5) a Reserve Fund of $80,000 for class members who file late claims and other miscellaneous events.  (See generally Stipulation and Settlement Agreement, Dkt. No. 159-8 (the "Settlement Agreement") § 2.)  Any amount of the settlement that is not claimed by members of the Settlement Class reverts back to Citi.  (Id. § 2.7.2.)  Eligible class members would include any individual who worked for Citi as a Home Lending Specialist in the years leading up to 2013, with the amount of time covered depending on the state in which the worker was employed.  (Id. §1.34.)  Citi denies all wrongdoing or liability.  (Id. at 3-4.)

## Certification of the Settlement Class and Appointment of the Class Representatives and Class Counsel

As part of the Settlement Agreement, the parties have stipulated to class certification pursuant to Fed. R. Civ. P. 23. (Settlement Agreement §2.1.) Rule 23(a) includes four requirements, numerosity, commonality, typlicality, and adequacy, each of which are present here. In the Second Circuit, numerosity is presumed at 40 class members, Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (1995), and the number here is well above that. There are also common questions of fact or law that apply to the class, including whether the class was subject to the overtime laws, whether Citi paid them appropriately, and whether Citi had some sort of companywide policy resulting in their underpayment. Similarly, the typicality requirement is satisfied in that each class member's claim arises from the same course of events - Citi's alleged policy of mischaracterizing employees in order to avoid paying overtime - and is based on similar legal arguments. See Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 252 (2d Cir. 2011) (citing Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)). As to whether the "representative parties will fairly and adequately protect the interests of the class," as required by Rule 23(a)(4), the Named Plaintiffs have fully

prosecuted the action thus far, obtained a significant

settlement, and have no known conflicts with any class member.

See Shahriar, 659 F.3d at 253.  Thus, the requirements of Rule

23(a) are satisfied.

Certification is also appropriate under Rule 23(b)(3)

because common questions of law or fact predominate - in

particular whether the class members were entitled to overtime

under the FLSA and NYLL and whether Citi had a companywide

policy to deprive them of overtime pay in spite of those laws -

and because a vigorously-prosecuted class action is a superior

alternative to each of the plaintiffs individually taking on

Citi, one of the world's largest and most powerful financial

institutions.  See Shahriar, 659 F.3d at 253 (upholding district

court's decision that classwide issues predominated in a FLSA

case regarding company pay policies); Lizondro-Garcia v. Kefi

LLC, 300 F.R.D. 169, 177 (S.D.N.Y. 2014) (finding FLSA class

action to be a superior method where employer had greater

financial capacity than employees, and where dealing with all

plaintiffs' allegations together would conserve judicial

resources).

The stipulated class is therefore certified, covering all

current and former employees in the United States who have

worked for Citi as a Home Lending Specialist ("HLS") at any time

between April 8, 2005 and September 15, 2013 if they worked in

New York, between April 8, 2008 and September 15, 2013 if they
worked in California, or between March 1, 2011 and September 15,
2013 if they worked elsewhere, including all HLSs who have opted
into this action or asserted claims against Citi in arbitration
similar to the ones at issue in this action.  The Named
Plaintiffs are certified as class representatives, and the law
firm of Wigdor LLP is certified as class counsel.


## Approval of the Proposed Settlement


### A. The Proposed Settlement is Procedurally Fair

"A proposed settlement is procedurally fair when it is
reached through arm's length negotiations between experienced,
capable counsel and after meaningful discovery." In re Wachovia
Equity Sec. Litig., No. 08 Civ. 6171, 2012 WL 2774969, at *3
(S.D.N.Y. June 12, 2012) (quoting Wal-Mart Stores, Inc. v. Visa
U.S.A., Inc., 396 F.3d 96, 116 (2d Cir. 2005)).  These
requirements are adequately satisfied here, where the parties
have vigorously contested the dispute through motion practice,
appeals, mediation, and settlement negotiations between
competent and effective counsel.  These considerations, combined
with a recognition of the "unique ability of class and defense
counsel to assess the potential risks and rewards of
litigation," Clark v. Ecolab, Inc., No. 07 Civ. 8623, 2009 WL

6615729, at *3 (S.D.N.Y. Nov. 27, 2009), lead the Court to conclude that the proposed settlement is procedurally fair.

## B. The Proposed Settlement is Substantively Fair

Under Fed. R. Civ. P. 23(e), a class action lawsuit may not be settled without court approval. Approval is to be granted only if the court is satisfied that the proposed settlement is fair, adequate, reasonable and not a product of collusion. Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000). In this Circuit, courts make such a determination by examining the proposed settlement through the lens of the nine factors set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), *overruled on other grounds as recognized in* Chambless v. Mates & Pilots Pension Plan, 885 F.2d 1053 (2d Cir. 1989). The Grinnell factors are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of

the settlement fund in light of all the attendant risks of
litigation.  Wal-Mart, 396 F.3d at 117.

As set forth below, eight of the nine Grinnell factors -
including those generally considered to be most significant -
weigh in favor of approval.  Accordingly, the proposed
settlement is deemed substantively fair.

1. Complexity, Expense, and Likely Duration of Litigation

Although an employment-based case may be simpler than one
based on more intricate areas of the law like securities fraud
or antitrust violations, even in the most basic employment class
action taking a case through trial is "complex, expensive, and
long."  See Lizondro-Garcia v. Kefi LLC, No. 12 Civ. 1906, 2014
WL 4996248, at *4 (S.D.N.Y. Oct. 7, 2014).  Here, the Plaintiffs
have suffered a setback at the Second Circuit, which reversed
this Court's denial of Defendants' motion to compel arbitration
on the basis of two subsequent appellate decisions holding that
the right to proceed under the FLSA can be waived by signing an
arbitration agreement.  Raniere v. Citigroup Inc., 533 F. App'x
11, 13-14 (2d Cir. 2013).  If this settlement is rejected, the
Plaintiffs intend to seek rehearing of that decision en banc,
and in the event that they lose, to seek certiorari from the
Supreme Court.  If unsuccessful there, a significant portion of

the class intends to pursue their claims through individual arbitrations, but the remainder of the class will still be in this Court, pushing the case forward toward trial.  (See Pl.'s Br., Dkt. No. 167, at 17-18.)  The first factor therefore weighs heavily in favor of approval.

2. Reaction of the Class to the Settlement

"It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig., 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) (quoting In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001).  Here, over eight hundred class members are participating in the settlement, with only two opt-outs, representing a very favorable reception from the class.

3. Stage of Proceedings and Amount of Discovery Completed

"In considering this factor, the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths and defenses asserted by the

defendants, and the value of plaintiffs' causes of action for purposes of settlement." In re Bear Stearns, 909 F. Supp. 2d at 267 (quotation omitted).  In this case, Citi has provided Class Counsel with the names of the HLSs at issue, along with their records, documents concerning their job responsibilities and Citi's decision regarding overtime pay.  While this level of discovery is less than the extensive obtaining of documents, written discovery, and depositions of key players that would grant class counsel a full picture of the risks and rewards available from continuing, it is sufficient to allow them to estimate the damages available and to get a sense of the potential stumbling blocks ahead of them, as evidenced by their cogent briefing on the issue.  (See Pl.'s Br. at 21-22.)  This factor therefore weighs in favor of approval.

4. Risks of Establishing Liability

In their brief in support of settlement, the Plaintiffs identify a number of potential risks they would confront if the case proceeded toward trial, particularly the possibility that the class members fall into one of several categories exempt from the FLSA and the NYLL, that Citi could defend itself by pointing to guidance from the Labor Department, and that some of the class members did not work the hours that they alleged.

(Pl.'s Br. at 22-23.)  Since Plaintiffs' ability to establish

liability is far from certain, this factor weighs in favor of

settlement approval.


    5. Risks of Establishing Damages


    Although not touched on in any detail in the Plaintiffs'

briefing, this point would also seem to weigh in favor of

approval.  No way of establishing how many hours above 40 per

week each class member actually worked has been established.

Even the Plaintiffs' damage calculations begin by "[a]ssuming

Class Members worked 60 hours per week."  (Pl.'s Br. at 26.)

Therefore, there are significant risks for the Plaintiffs in

attempting to show their damages.


    6. Risks of Maintaining the Class Through Trial


    The Named Plaintiffs' ability to maintain the class through

trial is already in grave danger, since the Second Circuit

reversed the portion of this Court's November 22, 2011 Opinion

that denied Citi's motion to compel arbitration.  Raniere v.

Citigroup Inc., 533 F. App'x 11, 14 (2d Cir. 2013).  While it is

possible that the Second Circuit would come to a different

conclusion en banc than its panel did, the panel's decision was

unanimous, leaving the Plaintiffs with a very real probability

that they will lose a significant portion of the class to

individual arbitrations.  Moreover, proceeding to trial would

also involve fact-specific inquiries into whether certain class

members fall into one of the many categories of employment that

are exempt from the FLSA and NYLL overtime pay requirements.

Plaintiffs thus face a significant likelihood of losing a

portion of the class between now and the outcome of a trial.

7. Ability of Defendants to Withstand a Greater Judgment

There is little doubt that Citi, whose 2015 Annual Report

lists over $1.8 Trillion in assets for Defendant Citigroup, Inc.

alone, see

https://www.citigroup.com/citi/investor/quarterly/2015/annual-

report/, could withstand any judgment that might possibly be

imposed in this case.

8. Range of Reasonableness of the Settlement Fund in Light of
the Best Possible Recovery

"The determination of whether a given settlement amount is

reasonable in light of the best possible recovery does not

involve the use of a mathematical equation yielding a

particularized sum." In re Bear Stearns, 909 F. Supp. 2d at 269

(quoting Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d

611, 621 (S.D.N.Y. 2012)).  Instead, "[t]here is a range of

reasonableness with respect to a settlement, a range which

recognizes the uncertainties of law and fact in any particular

case and the concomitant risks and costs necessarily inherent in

taking any litigation to completion." Wal-Mart, 396 F.3d at 119

(citing Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972)).

　　　Here, the Plaintiffs' "realistic damages analysis" - which

assumes that each class member worked sixty hours per week

before Citi's reclassification and three hours of off-the-clock

overtime afterward, propositions that will be very difficult to

prove - arrives at a possible damages figure of $11,477,939.61.

(Pl.'s Br. at 26.)  They also estimate that if they could defeat

Citi's argument that it acted in good faith, liquidated damages

could increase the total damages to $20,352,818.18.  (See id. at

27.)  The total recovery achieved by the Settlement Agreement

amounts to 22.8% of that total.  (Id.)

　　　The propriety of a given settlement is a function of both

the size of the amount relative to the best possible recovery

and the likelihood of nonrecovery (or reduced recovery).  In re

Bear Stearns, 909 F. Supp. 2d at 270.  Given the relatively

early stage of the litigation, the potential hurdles lying ahead

for the plaintiffs, and the recent setback at the Second

Circuit, a recovery figure of 22.8% seems within the bounds of reasonableness.

9. Range of Reasonableness of the Settlement Fund in Light of All Attendant Risks of Litigation

As discussed in more detail above, there are legitimate risks that the Plaintiffs will not be able to establish liability or prove damages, and continuing the litigation might result in a significant portion of the class dropping out. Taking this into account, the proposed settlement is a reasonable one.

Since the proposed settlement is both procedurally and substantively fair, and because the settlement of class action litigation is generally favored by the courts, see Wal-Mart, 396 F. 3d at 116-17, the proposed settlement is approved.

**The Service Awards for the Named Plaintiffs are Approved**

Class Counsel separately requests Court approval of service awards for the Named Plaintiffs, in the amount of $20,000 for Plaintiffs Raniere, Bodden, and Vosburgh, $15,000 for Plaintiff Singer, and $7,500 for Plaintiffs Humphries, Lara and Farmer.

Incentive awards are not uncommon in class action cases
and are within the discretion of the court. In
calculating incentive fees, courts consider: the
existence of special circumstances including the
personal risk (if any) incurred by the plaintiff
applicant in becoming and continuing as a litigant, the
time and effort expended by that plaintiff in assisting
in the prosecution of the litigation or in bringing to
bear added value (e.g., factual expertise), any other
burdens sustained by that plaintiff in lending himself
or herself to the prosecution of the claim, and of
course, the ultimate recovery.

The relevant inquiry is whether the particular case
presents special circumstances justifying an incentive
award. While the majority of reported decisions granting
incentive awards arise out of securities litigation,
such awards are particularly appropriate in the
employment context. In employment litigation, the
plaintiff is often a former or current employee of the
defendant, and thus, by lending his name to the
litigation, he has, for the benefit of the class as a
whole, undertaken the risk of adverse actions by the
employer or co-workers. Although there is no specific

measure for determining when an incentive award is
justified, courts consistently focus on the existence of
"special circumstances."

Ortiz v. Chop't Creative Salad Co., No. 13 Civ. 2541, 2015 WL
778072, at *3 (S.D.N.Y. Jan. 16, 2015) (quoting Frank v. Eastman
Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005)) (internal
quotation omitted).

It takes courage for any employee to challenge her
employer's workplace practices, and this is particularly true
when the employer is a powerful global financial institution.
This recognition, combined with the effort put forth by the
Named Plaintiffs during the litigation and the fact that the
service awards are tailored to each Named Plaintiff's
contribution to the case, lead to the conclusion that the
service awards are allowable.  That conclusion is buttressed by
the fact that the amount requested is roughly commensurate to
service awards approved in similar class actions.  See, e.g.,
Johnson v. Brennan, No. 10 Civ. 4712, 2011 WL 4357376, at *21
(S.D.N.Y. Sept. 16, 2011) (approving $10,000 service awards from
$440,000 settlement fund); Wright v. Stern, 553 F. Supp. 2d 337,
345 (S.D.N.Y. 2008) (Chin, J.) (approving $50,000 service awards
from $11.9 million settlement fund); McBean v. City of New York,
233 F.R.D. 377, 391 (S.D.N.Y. 2006) (Lynch, J.) (approving

service awards between $25,000 and $35,000 from $2.8 million settlement fund).

## The Requested Attorney's Fees are Approved

Wigdor LLP, the law firm representing the class of plaintiffs in this action, has requested one third of the settlement in fees, an amount totalling $1,550,000. (See Pl.'s Fee Br., Dkt. No. 169, at 1-2.) For the reasons stated below, the request is granted.

Courts in the Second Circuit tend to grant class counsel a percentage of any settlement, rather than utilize the "lodestar method" (multiplying the hours reasonably expended by a reasonable hourly rate), because the percentage method aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation. Wal-Mart, 396 F.3d at 121. The lodestar method, on the other hand, disincentivizes early settlements, tempts lawyers to run up their hours, and "compels district courts to engage in a gimlet-eyed review of line-item fee audits." Id.

The ultimate question of whether a given fee is reasonable is determined via reference to the factors outlined by the Second Circuit in Goldberger v. Integrated Resources Inc., 209

F.3d 43, 50 (2d Cir. 2000).  See Wal-Mart, 396 F.3d at 121.
Those factors are 1) the time and labor expended by counsel, 2)
the magnitude and complexities of the litigation, 3) the risk of
the litigation, 4) the quality of the representation, 5) the
requested fee in relation to the settlement, and 6) public
policy considerations.  Id.

Consideration of the first Goldberger factor, the time and
labor expended by counsel, cuts both ways.  On one hand, while
class counsel has prosecuted this case vigorously, this
settlement comes at a fairly early stage of the litigation.
There has been only one major set of motions thus far, resulting
in this Court's November 22, 2011 opinion, and while class
counsel prevailed there and was required to defend the decision
at the Second Circuit, the overwhelming majority of this case's
proceedings lie ahead.  The parties have not engaged in full
discovery, drafted summary judgment briefing, or come remotely
close to trial.

On the other hand, class counsel has engaged in a great
deal of work to bring the case this far.  Applying the lodestar
method as a "cross check", see Wal-Mart, 396 F.3d at 123,
Goldberger, 209 F.3d at 50, the one third figure seems
reasonable.  Class counsel represents in its briefing that it
has spent 3,429 hours of attorney, paralegal, and support staff
time in prosecuting this case, and that at its typical hourly

rates ($650-950 per hour for partners, $350-600 per hour for associates, and $180 per hour for staff and paralegals) that time would normally result in $1,560,358 in fees, a number roughly equivalent to one third of the settlement fund.

The hours "need not be exhaustively scrutinized." Goldberger, 209 F.3d at 50. Since the lodestar method is being used as a cross check, it is enough to note that the one third award is roughly commensurate with the work performed by class counsel, particularly since their proffered lodestar calculation does not involve any multiplier, which is applied in a significant number of class action settlements. See Wal-Mart, 396 F.3d at 123 (deeming a multiplier of 3.5 reasonable and citing cases involving multipliers between 1.35 and 4.5). The first Goldberger factor weighs in favor of approval.

The second Goldberger factor, the magnitude and complexity of the litigation, also weighs in favor of approval. "FLSA claims typically involve complex mixed questions of fact and law," Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 743 (1981), and this case is no different. In addition to the intricate issues regarding class certification and the enforceability of the arbitration agreements that the class already confronted leading up to this Court's November 22, 2011 Opinion, continuing the litigation would involve navigating through a multitude of potential exemptions to the FLSA and NYLL

overtime requirements and dealing with a potentially meritorious defense from Citi that it relied on guidance from the Department of Labor.  The size of the case, involving a nationwide class of over eight hundred, also weighs in favor of approval.

The third Goldberger factor, the risk of the litigation, also weighs in favor of approval.  Class counsel have obtained a large settlement for the Plaintiffs despite significant questions (discussed in more detail above) about whether they can make the legal and factual showing necessary to prevail.

The fourth Goldberger factor, the quality of representation, also weighs in favor of approval.  "To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit."  Taft v. Ackermans, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007).  As discussed above, the settlement obtained is a very good result for the plaintiff class, particularly given the amount of work ahead of it and the recent setback at the Second Circuit.  Class counsel is well-regarded in this District as skillful and effective class-action advocates.  See, e.g., Asare v. Change Grp. of N.Y., Inc., No. 12 Civ. 3371, 2013 WL 6144764, at *21 (S.D.N.Y. Nov. 18, 2013).

As to the fifth Goldberger factor, the proposed one-third fee is quite high in relation to the settlement.  See In re Bear

Stearns, 909 F. Supp. 2d at 272 ("The requested fee is only 12% of the Settlement Amount, well below the 17%-25% typically awarded . . . ."); In re Gilat Sattelite Networks, Ltd., No. 02 Civ. 1510, 2007 WL 2743675, at *16 (E.D.N.Y. Sept. 18, 2007) ("Since Goldberger, courts in the Second Circuit have tended to award attorneys' fees in amounts considerably less than 30% of common funds . . . ."). That said, the figure is at the upper range of what courts have considered reasonable. See Asare, 2014 WL 6144764, at *21 ("Courts in this Circuit have routinely granted requests of approximately one-quarter to one-third of the fund [in FLSA actions].") Thus, while the fifth Goldberger factor weighs against approval, it is not dispositive.

Public policy considerations also weigh in favor of approval. In wage-and-hour lawsuits such as this one, fee awards incentivize lawyers to act as "private attorneys general," taking action against abuses in the workplace that would otherwise go unremedied. See Prasker v. Asia Five Eight LLC, No. 08 Civ. 5811, 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010); see also Goldberger, 209 F.3d at 51 (commending "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest."). Approval thus forwards the public interest in deterring exploitation of workers by encouraging lawyers to represent their rights.

Taken in total, five of the six Goldberger factors weigh in favor of approval.  The fee award is therefore approved.

## **Class Counsel's Expenses are Approved for Reimbursement**

Wigdor separately requests $44,376.14 in reimbursement for expenses incurred in connection with this litigation.  "It is well-settled that attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients."  In re Bear Stearns, 909 F. Supp. 2d at 272 (citing In re Indep. Enegry Hldgs. PLC Sec. Litig., 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003)). Accordingly, the requested amount is approved.

## **Conclusion**

For the foregoing reasons, the motion for final certification of the class, final appointment of Lead Plaintiffs and Class Counsel, and approval of the settlement is granted. Additionally, for the foregoing reasons, the motion for attorney's fees and reimbursement of litigation expenses is also granted.

It is so ordered.

New York, NY
September 29, 2015

_____
ROBERT W. SWEET
U.S.D.J.